## E. P. FREDIN v. CHARLES W. PATSOLD.[1]

May 5, 1922.

No. 22,752.

**Slander — words to be considered in sense understood by hearers.**

1. Defendant spoke of and concerning the plaintiff: "You are a murder." *Held* that, while a false charge of homicide is actionable per se, yet, in determining whether such a charge has been made, the words uttered are to be considered in the sense in which the hearers understood them.

**Evidence admissible concerning facts in relation to utterance.**

2. In order that the jury might understand the sense in which the words spoken were understood by the hearers, it was proper to go into the subject then under discussion and in so doing to offer proofs as to the facts in relation thereto.

**Verdict sustained.**

3. The record considered and *held* that the evidence justifies the verdict.

Action in the district court for Isanti county to recover $10,000 for slander. The case was tried before Giddings, J., and a jury

[1]Reported in 188 N. W. 154.

which returned a verdict in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Jesse Van Valkenburg,* for appellant.

*Albert F. Pratt,* for respondent.

QUINN, J.

Action to recover damages for slander. The complaint charges that at the court house in Cambridge, on June 6, 1919, defendant spoke of and concerning the plaintiff as follows: "You are a liar; you are a murderer; you have shed blood in my family." The cause was tried to a jury and a verdict returned in favor of the defendant. From an order denying his motion for a new trial plaintiff appeals.

Plaintiff is about 50 years of age. He has been a farmer and deals in domestic animals. He helped to organize the Isanti County State Bank of which he was a stockholder, director and its president. He is prosperous and of good standing in the community. Defendant is about 63 years of age, engaged in the farm implement business, a stockholder in the Isanti County Bank and connected with the First State Bank of Cambridge. He also is prosperous and of good standing in the community in which he lives.

Albert H. Hanson, now deceased, was defendant's son-in-law and cashier of the Isanti County Bank. On February 13, 1918, the witness Westblad left with Hanson $600 to be invested in mortgages. This was placed to Hanson's credit in the bank and partly checked out by February 25, 1918. The amount was later repaid in part by the estate and the balance by the bank. On January 10, 1918, the bank was requested to report its condition as of December 31, 1917. At that time the bank had overdrafts totaling $4,519.12, but the cashier prepared a report, which he and the plaintiff both signed, showing overdrafts on December 31 of $519.12, thereby falsifying the report to the amount of $4,000.

On February 17 plaintiff started out to buy a car of horses, leaving at the bank his note for $2,000, which raised his indebtedness to over $5,000. This was in excess of the amount allowed under the banking laws. On February 25 the bank examiner called to examine the bank. During the forenoon of that day Hanson went

to plaintiff's place of business two or three times to talk with him. Shortly before 2 o'clock in the afternoon, while the bank examiner was checking up the affairs of the bank, Hanson committed suicide in the basement of the bank building by shooting himself. Westblad claimed that defendant thereafter promised to pay him the $600 which he had left with Hanson for investment. Defendant denies this. It was over this alleged promise, in a heated altercation between plaintiff and defendant, that the alleged slanderous words are claimed to have been spoken. Defendant, upon the witness stand, admitted that he had said to the plaintiff at the time and place charged: "You are a murderer." The plaintiff contends that such words are slanderous per se. The trial court instructed the jury that such words are slanderous per se, unless it be shown that the words were true in the sense in which they were used and were so shown by the proofs in the case. The plaintiff claims that defendant should be held to have used the words in their ordinary meaning, and that in whatever sense used there is no evidence in the record to show that they were true.

A false charge of homicide is clearly actionable per se, but, in determining whether such a charge has been made, the words uttered are to be taken and considered in the sense in which the hearers understood them. In the present case, in order that the jury might consider the sense in which the words admitted to have been spoken were understood, it was proper to go into the subject under discussion, and in so doing to offer proof as to the facts in relation thereto. While the testimony took quite a wide range and went considerably into detail, yet we discover no error such as to require a reversal and the granting of a new trial.

The trial court permitted the defendant to offer proof as to the plaintiff's relations with the bank, the manner and extent of his business transactions therewith and the condition of the bank while plaintiff was its president, not in justification of the charge, but as explanatory of the words and the sense in which they were understood by those present. The conversation as related by the witnesses clearly indicates that the topic discussed by plaintiff and defendant at the time in question had reference to the affairs of the bank and

the manner in which the officials thereof allowed the same to exist. It is perfectly manifest that Hanson ended his life because of the condition of the affairs of the bank. Whether the impetuous act was attributable to plaintiff's dereliction in his relations with the bank is not altogether clear. However, by its verdict the jury evidently was of the opinion that it was, and accordingly found the words admittedly uttered to so charge and that they were so understood by those who heard them. It cannot be said with any degree of justification that the words so spoken could have been understood in any other sense by those familiar with the circumstances. There were conditions, however, with which plaintiff had nothing to do which might and undoubtedly did figure in the tragedy.

It appears from the record that while a director and president of the bank plaintiff frequently had overdrafts and borrowed in excess of the amount permitted by the banking laws, that many customers were allowed to overdraw their accounts, of which he had knowledge, and that the bank examiner had criticized this condition in the bank and requested him to see to it that such condition cease to exist. It was such conditions that brought about the trouble. We have given the record careful consideration and are of the opinion that the evidence justified the verdict.

Affirmed.